IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PETER BAHM,**<br>**1725 POTOMAC GREEN DRIVE**<br>**ALEXANDRIA, VA 22314**<br><br> *Plaintiff,*<br><br>v.<br><br>**CHERE REXROAT, ACTING ARCHITECT**<br>**OF THE CAPITOL**<br>**SB- 15 U.S. Capitol Building**<br>**Washington, DC 20515,**<br><br>     Serve:<br><br>**Chere, Rexroat, Acting Architect**<br>**of the Capitol**<br>**SB-15 US Capitol Building**<br>**Washington, DC 20515,**<br><br>**United States Attorney's Office**<br>**for the District of Columbia,**<br>**Attn: Civil Process Clerk**<br>**555 4th St., NW**<br>**Washington, DC 20530,**<br><br>**Merrick B. Garland, Attorney General,**<br>**950 Pennsylvania Avenue, NW**<br>**Washington, DC 20530-0001,**<br><br>                    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

**CIVIL COMPLAINT FOR EQUITABLE AND**
**<u>MONETARY RELIEF AND DEMAND FOR JURY TRIAL</u>**

Plaintiff Peter Bahm brings this complaint against Defendant the Architect of the Capital

(AOC), for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title

1

VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(a) ("USERRA"), as applied by the Congressional Accountability Act of 1995 ("CAA"), as amended by the CAA 1995 Reform Act of 2018. 2 U.S.C. § 1311 et seq., when it terminated Bahm.

## PARTIES

1. Claimant is domiciled in Alexandria, VA and was employed by the AOC as the chief of staff for the Architect of the Capitol.

2. Bahm is an "employee" as defined by 42 U.S.C. § 2000e and a "covered employee" pursuant to the CAA at 2 U.S.C. § 1301(3)(F).

3. Respondent AOC is the federal agency responsible for the maintenance, operation, development, and preservation of the United States Capitol Complex, with its headquarters located at SB-15 U.S. Capitol, U.S. Capitol Building, Washington, DC 20515.

4. The AOC is an "employer" as defined by 42 U.S.C. § 2000e and an "employing office" pursuant to the CAA at 2 U.S.C. § 1301(9)(D).

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it asserts claims that arise under the laws of the United States, specifically Title VII, USERRA, and ADEA.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the Defendants' headquarters are in this judicial district and the alleged violations took place in this judicial district.

## FACTUAL ALLEGATIONS

7. Bahm is a 58-year-old white male residing in Alexandria, VA.

8. Bahm served in the United States Air Force for 23 years, working mainly in engineering roles, before retiring as a Lt. Colonel.

9. Bahm started working for AOC in or about 2010 as its director of construction. The AOC appointed Bahm to the position of acting chief of staff in September 2019 and then to the permanent position of chief of staff in 2021.

10. Brett Blanton, the Architect of the Capitol, was Bahm's direct supervisor, and Bahm performed well at AOC and had no disciplinary record.

11. In or about November 2020 the AOC hired Christine Leonard as its director of legislative and public affairs.

12. The legislative and public affairs director position is influential because it allows for one person to manage both public communications as well as communications with staffers for the Senate Committee on Rules & Administration and the House Committee on House Administration, which typically make decisions for the AOC that the Architect is obliged follow. The director of legislative and public affairs meets daily with the Architect.

13. Erin Courtney served as acting director prior to Leonard's hiring and became Leonard's direct report after onboarding her, returning to her permanent position as public affairs officer until she resigned in February 2021.

14. Leonard asked Courtney during the onboarding process why AOC employed so many military veterans. Courtney replied that the Office of Personnel Management favors veterans in the hiring process.

15. Leonard also asked Courtney about older members of AOC's senior leadership, including whether Courtney believed CFO John Kraft, age 62, was mentally "with it." Courtney responded that Kraft occasionally neglected to add attachments to emails but that he was

3

otherwise "with it." Leonard then suggested that Courtney report Kraft to human resources, but Courtney declined to do so.

16. Leonard regularly and critically pointed out to Courtney that she believed that there too many white male veterans in executive positions at the AOC after Courtney began to report to Leonard.

17. Leonard also regularly complained to Mary Jean Pajak, the AOC's deputy chief of staff, about Bahm, Kraft, AOC General Counsel Jason Baltimore, and AOC Chief Administrative Officer Bill O'Donnell, criticizing their use of military language and opining that they engaged in "mansplaining" during work meetings. Leonard also complained that she felt Bahm, Kraft, Baltimore, and O'Donnell weren't supporting her and were incompetent.

18. Leonard suggested to Blanton that Kraft be terminated in a meeting between Blanton and Leonard. Blanton or Leonard told Bahm about Leonard's suggestion to terminate Kraft.

19. Leonard responded in a hostile and infuriated manner when senior AOC staffers voiced opposition to assuming financial responsibility for a project at the Library of Congress, an agency headed at the time by Dr. Carla Hayden, a woman of color. Leonard declared in response "How dare you take that position after all Dr. Hayden has done as a woman of color to expand accessibility?!"

20. On or about February 13, 2023, Leonard asked Bahm to advise her as to which AOC employment positions were "at will" as opposed to being civil service. Bahm responded that all AOC executives served at the pleasure of the Architect.

21. On or about February 13, 2023, President Joe Biden fired Blanton over a series of ethical violations involving impersonating a police officer, misusing a public vehicle, and giving private tours of the Capitol.

22. Chere Rexroat, the chief engineer, became acting Architect on February 14, 2023.

23. In the weeks following her appointment as acting Architect, Rexroat limited her interaction with Bahm and other members of the C-suite, except for Leonard—who she met with regularly.

24. In or about March 2023, Rexroat offered Bahm a new temporary position as acting head of the Capitol Visitor Center. Bahm accepted the offer and was slated to begin on or about March 27, 2023.

25. On or about March 26, 2023, Rexroat advised Bahm that she was no longer appointing him as acting head of the Capitol Visitor Center. Rexroat did not provide an explanation.

26. On or about April 6, 2023, Rexroat advised Bahm that he could resign, effective immediately, or else she would terminate his employment, effective immediately. Rexroat also fired or forced resignations that same day from Kraft, Bill O'Donnell, and Jason Baltimore.

27. Rexroat terminated four of the five executive-level men in the AOC C-suite. Three out of the four terminated men are white, all four terminated men are veterans, and all four terminated men are over 40 years old. All four of the female executives in the AOC C-suite were not terminated.

28. Reporters for The Hill contacted Bahm and Kraft later that day for a comment on the articles they were about to publish about Bahm, Kraft, O'Donnell, and Baltimore's

termination. The reporters advised that they were supplied an email sent by Rexroat implying that the four of them were implicated in Blanton's wrongdoing.

29. The AOC's public affairs office, headed by Leonard, leaked the email to the press before it was sent to its intended recipients.

30. Because the leaked internal email falsely implicating Bahm in Blanton's wrongdoing, The Hill and Roll Call published articles on or about April 7, 2023, implying the same, unwittingly publishing false information and gravely damaging Bahm's career.

31. On or about April 27, 2023, Bahm received his SF-50 reflecting his termination, and the AOC reported that it terminated Bahm due to misconduct.

32. Because of the falsity of the statement the AOC made in his SF-50, Bahm requested the AOC change his SF-50 to remove the misconduct allegation, which it eventually did on or about May 10, 2023.

33. As the result of AOC's illegal actions, Bahm sustained mental anguish and economic damages, and he will continue to sustain damages into the future.

## COUNT I
**Discrimination Based on Race**
**Title VII of the Civil Rights Act of 1964**
**2 U.S.C. § 1311**

34. Bahm hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

35. Bahm is an "employee" as defined in 42 U.S.C. § 2000e(f) (Title VII).

36. Bahm is a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(F) and 2 U.S.C. § 1301(4).

37. The AOC is an "employer" as defined by 42 U.S.C. § 2000e (Title VII).

38. The AOC is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D). 37. The AOC violated Title VII, as incorporated with respect to the AOC by the Congressional Accountability Act (CAA), by discriminating against Bahm, based on his race, when it terminated his employment on April 6, 2023.

39. The AOC's reasons for terminating Bahm are pretext for its unlawful race discrimination.

40. Bahm sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

## COUNT II
### Discrimination Based on Sex
### Title VII of the Civil Rights Act of 1964
### 2 U.S.C. § 1311

41. Bahm hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

42. Bahm is an "employee" as defined in 42 U.S.C. § 2000e(f) (Title VII).

43. Bahm is a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(F) and 2 U.S.C. § 1301(4).

44. The AOC is an "employer" as defined by 42 U.S.C. § 2000e (Title VII).

45. The AOC is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D).

46. The AOC violated Title VII, as incorporated with respect to the AOC by the Congressional Accountability Act (CAA), by discriminating against Bahm, based on his sex, when it terminated his employment on April 6, 2023.

47. The AOC's reasons for terminating Bahm are pretext.

48. Bahm sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

### COUNT III
### USERRA
### 38 U.S.C. § 4311(a)
### Discrimination

49. Bahm hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

50. Bahm performed service in the United States Air Force.

51. AOC was motivated by the fact that he had served in the United States Air Force when it terminated his employment.

52. Bahm lost a benefit of employment when AOC removed him from federal service.

53. Bahm's former membership in a uniformed service of the United States was a substantial or motivating factor in AOC's decision to remove Bahm.

54. Bahm sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

### COUNT IV
### The Age Discrimination in Employment Act 29 U.S.C. §§ 621 *et seq.*
### Discrimination

55. Bahm hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

56. Bahm is over 40 years old.

57. The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

58. AOC's decision to remove Bahm was based on his age.

59. AOC's reasons for its action are pretextual.

8

60.     Bahm sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

## **PRAYER FOR RELIEF**

Bahm respectfully requests that he be awarded the following relief against the AOC:

a.     Reinstatement or, in lieu thereof, full front pay and benefits;

b.     Economic damages for lost compensation, retirement benefits, and damages to Bahm's career, reputation, and earning capacity in an amount to be determined;

c.     Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

d.     Injunctive and declaratory relief;

e.     Reasonable costs and experts' and attorneys' fees; and

f.     Any other such relief that a court may deem just and equitable.

Respectfully submitted,

*/s/ Anita M. Chambers*
Anita M. Chambers

R. Scott Oswald, D.C. Bar No. 458859
Anita Mazumdar Chambers,
D.C. Bar No. 1046845
The Employment Law Group, P.C.
1717 K St NW, NW, STE 1110
Washington, DC  20006
(202) 261-2821
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com
*Counsel for Peter Bahm*